UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY T. LEVINE, | No. 2:17-cv-0540 DB |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion evidence and plaintiff's subjective testimony constituted error. For the reasons explained below, plaintiff's motion is granted in part, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

////

////

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 7 & 8.)

1

PROCEDURAL BACKGROUND

On March 5, 2012, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") alleging disability beginning on November 1, 2008. (Transcript ("Tr.") at 10, 252-55.) Plaintiff's alleged impairments included depression, anxiety, PTSD, ADHD, and bipolar disorder. (Id. at 277.) Plaintiff's application was denied initially, (id. at 135-38), and upon reconsideration. (Id. at 140-42.)

Thereafter, plaintiff requested a hearing, and hearings were held before an Administrative Law Judge ("ALJ") on June 27, 2014, March 23, 2015, and August 26, 2015. (Id. at 41-113.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 41, 65, 91.) In a decision issued on October 1, 2015, the ALJ found that plaintiff was not disabled. (Id. at 26.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since November 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: traumatic brain injury, posttraumatic stress disorder, mood disorder, agoraphobia, degenerative disc disease of the cervical, thoracic and lumbar spine(s), degenerative joint disease of the bilateral knees and obesity (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: the claimant is able to lift, carry push or pull 20 pounds occasionally and 10 pounds frequently. The claimant is able to sit for 8 hours in an 8-hour workday with normal breaks. The claimant requires the ability to alternate between sitting and standing every 45 minutes without leaving the workstation. The claimant is able to stand or walk for 6 hours in an 8-hour workday with normal breaks. The claimant is unable to engage in prolonged standing or walking; she will require the ability to change positions after standing or walking for 20 minutes. The claimant is unable to climb ladders, ropes or scaffolds. She may perform frequent

> stooping, crouching, crawling and kneeling. The claimant must avoid all exposure to work hazards, such as unprotected heights and moving machinery. The claimant is able to receive, remember, understand and carryout simple job instructions. She is limited to occasional performance of detailed tasks. The claimant is capable of less than occasional interaction with public. She may have frequent interaction with supervisors and co-workers. The claimant is capable of making simple workplace judgments. She is able to maintain a work schedule.
>
> 6. The claimant is capable of performing past relevant work as an office helper (DOT: 239.567-010). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2008, through the date of this decision (20 CFR 404.1520(f)).

(Id. at 12-26.)

On February 8, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's October 1, 2015 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on March 14, 2017. (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

////

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following two principal claims: (1) the ALJ's treatment of the medical opinion evidence constituted error; and (2) the ALJ improperly rejected plaintiff's subjective testimony.[2] (Pl.'s MSJ (ECF No. 23) at 24-32.[3])

I. Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or non-examining health

---

[2] The court has reordered plaintiff's argument for purposes of clarity and efficiency.

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

A. Dr. Stephanie Stowman

Plaintiff challenges the ALJ's treatment of the opinions offered by Dr. Stephanie Stowman, plaintiff's treating psychologist.[4] (Pl.'s MSJ (ECF No. 23) at 26-30.) The ALJ's decision discussed Dr. Stowman's opinions, explaining:

> In June 2012, treating physician, S. Stowman, Ph.D., rendered a mental assessment, wherein she opined as follows: the claimant has moderate restriction in activities of daily living, extreme limitation in social functioning and marked limitation in concentration, persistence or pace with extreme episodes of decompensation secondary to anxiety. She has moderate restriction in activities of daily living, marked limitation in social functioning and marked limitation in concentration, persistence or pace with extreme episodes of decompensation secondary to depression. In July 2013,

---

[4] See Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)) ("opinion of a specialist about medical issues related to his or her area of specialty'" should be given greater weight).

5

> Dr. Stowman rendered an updated assessment, wherein she found as follows: the claimant has no useful ability to function in the areas of maintaining attention for two hours and completing a normal workday/workweek. The claimant is unable to meet competitive standards in the areas of understanding and remembering short, simple instructions, carrying out simple instructions, maintaining regular attendance, sustaining an ordinary routine without special supervision, working in coordination with others, performing at a consistent place (sic), responding to stress and change for unskilled work and carrying out detailed instructions. The claimant is seriously limited, but not precluded from understanding and remembering detailed instructions, interacting with the public, making simple decisions and interacting with supervisors and co-workers. The claimant has satisfactory abilities to be aware of hazards and maintain socially appropriate behavior. In another report, Dr. Stowman opined the claimant was totally and permanently disabled.

(Tr. at 22) (citations omitted).

The ALJ afforded Dr. Stowman's opinions "little weight." (Id. at 22, 23.) The ALJ offered three reasons in support of this determination. First, the ALJ found that Dr. Stowman's opinions were "internally inconsistent." (Id. at 23.) Specifically, the ALJ noted that "[i]n her July 2013 report, Dr. Stowman" opined that plaintiff was "unable to meet competitive standards in the ability to remember <u>simple</u> tasks." (Id.) (emphasis in original). But "[a]t the same time, Dr. Stowman found the claimant is not precluded from the ability to remember <u>detailed</u> tasks." (Id.) (emphasis in original).

The ALJ conceded that "this inconsistency may have been inadvertent," but that the discrepancy nonetheless "suggests Dr. Stowman may not have been discriminate enough in recording her opinion." (Id.) Dr. Stowman's opinions, however, are quite consistent. The ALJ's decision, in fact, explained that the ALJ "considers the opinions similar in nature and they all find the claimant to be completely incapacitated by mental health symptoms." (Id. at 22.) In light of the consistency of the opinions, and Dr. Stowman's status as a treating physician, the court cannot find that a single inconsistency in a degree of limitation is a legitimate reason to reject every aspect of multiple opinions by a treating physician.

Next, the ALJ found Dr. Stowman's opinions "inconsistent with the claimant's own account of daily living." (Id. at 23.) The ALJ noted that plaintiff was the "primary caregiver to her young son," can shop in public, and attended church. (Id.) The ALJ then noted that Dr.

6

Stowman opined that plaintiff had "no 'useful ability to function' in the area of completing a workweek, and 'unable to meet competitive standards' in the ability to sustain an ordinary routine without special supervision." (Id.) The ALJ mused, "[o]ne would wonder how the claimant would be capable of full-time child rearing and venturing out in public, if she were as limited as alleged." (Id.)

However,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). In this regard, that a plaintiff can care for a child, shop in public, and attend church is not legitimate reason for rejecting the opinions of a treating physician concerning the plaintiff's ability to work.

The final reason offered by the ALJ for rejecting Dr. Stowman's opinions was that they "contrast[] with the infrequent and conservative treatment measures by Dr. Stowman." (Tr. at 23.) The ALJ asserted:

> Surely, if the claimant were incapacitated (as alluded to by Dr. Stowman), she would have recommended more frequent treatment than 1-2 office visits per month. In fact, one would assume Dr. Stowman would have requested inpatient care since the claimant has marked to extreme limitation in social functioning and concentration, persistence or pace, as well as extreme episodes of decompensation.

(Id.)

An ALJ may discount a physician's opinion if it is inconsistent with the plaintiff's conservative treatment. See, e.g., Hanes v. Colvin, 651 Fed. Appx. 703, 705 (9th Cir. 2016) ("the ALJ reasonably relied on his findings regarding Hanes's daily activities, her conservative treatment, and her positive response to that treatment to conclude that the assessments of Dr. Hawkins and Dr. Pena were inconsistent with the objective evidence in the record"). However, referring someone for psychiatric hospitalization is not the same as referring someone for surgery. For example, psychiatric hospitalization is costly, disruptive, carries considerable stigma, will

7

severely impact the patient's ability to care for a child, and may even call into question the plaintiff's custody of the child.[5]

Likewise, there may be good reasons for a treating psychologist to determine that one to two office visits per month is what is possible or best for their patient. Office visits are time consuming. They may be costly. And they are likely to be especially challenging for a patient who suffers from PTSD and agoraphobia—as plaintiff does here. (Tr. at 12.) In this regard, there is nothing inconsistent about Dr. Stowman's opinions and plaintiff's treatment with monthly or bimonthly counseling and psychotropic medications. See Drawn v. Berryhill, 728 Fed. Appx. 637, 642 (9th Cir. 2018) ("the ALJ improperly characterized Drawn's treatment as 'limited and conservative' given that she was prescribed a number of psychiatric medications").

Accordingly, the court finds that the ALJ failed to offer specific and legitimate, let alone clear and convincing, reasons for rejecting Dr. Stowman's opinions.

B. Dr. Kimberly Adams

Plaintiff next challenges that ALJ's treatment of the August 5, 2013 opinion provided by Dr. Kimberly Adams, plaintiff's treating physician. (Pl.'s MSJ (ECF No. 23) at 31.) The ALJ's decision recounted Dr. Adams' opinion as follows:

> In August 2013, treating physician, K. Adams, M.D., rendered a physical assessment, wherein she opined as follows: the claimant is unable to lift less than 10 pounds occasionally. The claimant is able to sit or stand for 15 minutes at one time for a total of less than 2 hours in an 8-hour workday. The claimant must alternate between sitting and standing. The claimant requires use of an assistive device during ambulation. The claimant is unable to climb, crouch, twist or stoop. The claimant will be off task more than 25% of the workday. She will miss work more than 4 times per month.

(Tr. at 23.)

The ALJ afforded Dr. Adams' opinion "little weight." (Id.) The ALJ found Dr. Adams' opinion to be "so extreme as to be unbelievable," "contradicted by the solely conservative treatment recommendations," and "inconsistent with diagnostic test results[.]" (Id.) In this regard, the ALJ stated that "[i]f the claimant was debilitated by her symptoms, her treating

---

[5] Dr. Stowman's treatment notes reflect that plaintiff has a "limited social support system," and lost "custody of her eldest son when he was 18 months old." (Id. at 384.)

8

physicians would have recommended aggressive medical care." (Id.) Instead, "physicians found surgery not warranted, and recommended only pain management efforts." (Id.)

Dr. Adams, also opined with respect to plaintiff's "severe depression," anxiety, personality disorder and complex PTSD. (Id. at 415-16.) Specifically, Dr. Adams found that plaintiff's "severe depression/anxiety" rendered plaintiff "[i]ncapable of even 'low stress' work[.]" (Id. at 418.) That opinion would find support from plaintiff's treating psychologist, Dr. Stowman.

This aspect of Dr. Adams' opinion, however, was never discussed by the ALJ. The ALJ's reasons for discrediting Dr. Adams' opinion do not concern Dr. Adams' opinion with respect to plaintiff's mental impairments. Instead, the ALJ's criticism of Dr. Adams' opinion concerned "medical care," "pain management efforts," and "diagnostic test results." (Id. at 23.)

The ALJ must consider all relevant medical opinions as well as the combined effects of all of the plaintiff's impairments, even those that are not "severe." 20 C.F.R. §§ 404.1545(a); 416.945(a); Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003). And the ALJ must determine a claimant's limitations on "all relevant evidence in the record." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). Even where controverted by another doctor, an ALJ may only reject the opinion of a treating physician for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31.

Here, the ALJ's decision did not discuss Dr. Adams' opinion with respect to plaintiff's mental impairments. And the ALJ did not provide specific and legitimate, let alone clear and convincing, reasons for rejecting Dr. Adams' opinion with respect to plaintiff's mental impairment.

C. Curtis Child, Nurse Practitioner

Plaintiff challenges the ALJ's treatment of the opinion offered by Curtis Child, a Nurse Practitioner with Las Vegas Psychiatry. (Pl.'s MSJ (ECF No. 23) at 25.) The ALJ's discussion of Child's opinion states, "[i]n March 2012, treating professional, C. Child, APRN, BC, rendered a mental assessment, wherein he found the claimant unable to perform work in a high stress environment. He opined claimant is unable to work 20 hours or more per week." (Tr. at 22.)

The ALJ afforded Child's opinion "little weight." (Id.) The first reason provided by the ALJ in support of this determination was that "Mr. Child is a nurse, and therefore not considered an acceptable medical source per" Social Security Rules. (Id.) However, in addition to evidence from acceptable medical sources, a plaintiff may offer opinions from "other sources" to establish the severity of impairments. See 20 C.F.R. §§ 404.1513(d), 416.913(d).

"An ALJ may discount the opinion of an 'other source,' such as a nurse practitioner, if she provides 'reasons germane to each witness for doing so.'" Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017) (quoting Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)); see also Petty v. Colvin, 954 F.Supp.2d 914, 926 (D. Ariz. 2013) ("An ALJ is free to discount testimony from other sources, but as the Commissioner concedes, he must give reasons germane to each witness for doing so."). Thus, the fact that Child is a nurse practitioner cannot be a germane reason for discounting Child's opinion.

The second reason offered by the ALJ for discounting Child's opinion was the ALJ's finding that the "assessment [was] contradicted by contemporaneous medical reports, wherein the claimant showed largely stable symptoms." (Tr. at 22.) The ALJ then noted that "in March 2012, treatment reports showed a Global Assessment Functioning score averaging 51-60, consistent with only moderate symptoms," and that "notations indicated primarily normal mental status examinations." (Id.)

Child's opinion, however, finds support from the opinions of Dr. Stowman and Dr. Adams. Moreover, a Global Assessment of Functioning or "GAF" score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). "A GAF score between 51 to 60 describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

////

However, "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." Id.; see also McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (quoting 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000)) ("The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.'"). And a treating provider could certainly determine that their patient's symptoms would worsen if placed in a work environment. In this regard, there is no apparent contradiction between a patient having moderate symptoms, and a treating provider's opinion that the patient would be "unable to perform work in a high stress environment," or "unable to work 20 hours or more per week." (Tr. at 22.)

The final reason offered by the ALJ for discrediting Child's opinion was that the opinion was "inconsistent with the claimant's own accounts of daily activities." (Tr. at 22.) The ALJ explained that plaintiff "admitted she was capable of caring for her child, living only with her minor son and disabled boyfriend/husband." (Id.) (citation omitted). However, there is nothing inconsistent about being able to care for your child and not being able to work in a high stress environment or 20 hours per week. Although caring for children is certainly stressful, it differs from employment in important respects, including flexibility, accommodations, and competitive demands.

Accordingly, the court finds that the ALJ failed to offer germane reasons supported by substantial evidence for rejecting Child's opinion. For the reasons stated above, plaintiff is entitled to summary judgment on the claim that the ALJ's treatment of the medical opinion evidence constituted error.

II. Plaintiff's Testimony

In a vague and conclusory manner, plaintiff challenges the ALJ's treatment of plaintiff's subjective testimony. (Pl.'s MSJ (ECF No. 23) at 31-32.) Plaintiff's entire argument is as follows:

////

////

> There being no finding that Ms. Levine was malingering, her testimony could only be discredited for clear and convincing reasons. As discussed above, however, her testimony is uniformly supported by the opinions and findings of her treating providers and there is no evidence to the contrary, let alone clear and convincing evidence. Accordingly, her testimony must be accepted.

(Pl.'s MSJ (ECF No. 23) at 31-32.) Conversely, the ALJ's analysis of plaintiff's testimony spans essentially two full pages, and provides multiple reasons for discrediting plaintiff's testimony, with citations to the record. (Tr. at 19-21.) Plaintiff's argument fails to specifically address any of the reasons offered by the ALJ for discrediting plaintiff's testimony and simply makes a vague reference to the "opinions and findings of her treating providers[.]" (Pl.'s MSJ (ECF No. 23) at 31.)

The court cannot say that the ALJ improperly discredited plaintiff's testimony in the absence of any support for that assertion from the plaintiff.[6] Moreover, it appears that, at least, one of the reasons offered by the ALJ for discrediting plaintiff's testimony was clear and convincing. In this regard, the ALJ noted that although plaintiff testified that plaintiff stopped driving in 2007, treatment notes reflected that plaintiff had a warrant for an unpaid traffic ticket in 2013. (Tr. at 19, 58, 406.) Inconsistency is a permissible reason to discredit subjective testimony. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) ("These inconsistencies [lab reports contradicting plaintiff's subjective complaint] constitute significant and substantial reasons to find Parra's testimony less than completely credible.").

Accordingly, plaintiff's motion for summary judgment is denied with respect to plaintiff's claim that the ALJ's treatment of plaintiff's subjective testimony constituted error.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)).

---

[6] The court anticipates that future claims from plaintiff's counsel will consist of more than three vague sentences devoid of citation to either the record or the law.

12

A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the opinions of plaintiff's treating providers are consistent. Moreover, when the Vocational Expert ("VE") was asked a hypothetical question consistent with the limitations found by those providers, the VE answered that "[t]here are not jobs" for such an individual. (Tr. at 110-12.) And the record as a whole does not create serious doubt as to whether plaintiff is disabled within the meaning of the Social Security Act with respect to plaintiff's mental impairments.

However, it is unclear from the record when plaintiff's disability commenced. Plaintiff's alleged onset date is November 1, 2008. (Id. at 12.) Nurse practitioner Child's opinion was generated in March of 2012, and Dr. Stowman's first opinion was in June of 2012. Accordingly, this matter will be remanded solely for the purpose of determining the date of plaintiff's onset of disability.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 23) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (ECF No. 25) is granted in part and denied in part;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with the order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: September 5, 2018

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\levine0540.ord